RICHARD J. NELSON (State Bar No. 141658)
E-Mail: rnelson@sideman.com
SIMONE M. KATZ-O'NEILL (State Bar No. 246490)
E-Mail: soneill@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Eighth Floor
San Francisco, California 94111-3629
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for SCG POWER RANGERS LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCG POWER RANGERS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KUNAL KANDPAL, an individual,<br><br>Defendant. | Case No. CV 12 3765 JSC<br><br>**COMPLAINT FOR:**<br>1. COPYRIGHT INFRINGEMENT<br>2. DMCA MISREPRESENTATION<br>3. TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))<br>4. TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a)(1) |

Plaintiff SCG Power Rangers LLC ("Plaintiff" or "SCG"), by its attorneys, for its Complaint against Defendant Kunal Kandpal ("Defendant" or "Kandpal") hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over this matter in that Plaintiff seeks an injunction and damages against Defendant named herein under 17 U.S.C. §§ 501 (copyright infringement) and 15 U.S.C. §§ 1114 and 1125 (trademark infringement).

2. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(c)(3) because, on information and belief, Defendant is a nonresident of the United States and a domiciliary of India.

3. In addition, Defendant has expressly consented to the jurisdiction of this Court.

COMPLAINT

**INTRADISTRICT ASSIGNMENT**

4. Pursuant to Local Rule 3-2, Intellectual Property actions are assigned on a district-wide basis.

**PARTIES**

5. Plaintiff SCG is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Los Angeles, California. SCG is the owner of the intellectual property rights to, inter alia, the Power Rangers television programs, and licenses and merchandises the Power Rangers brand.

6. On information and belief, Defendant Kandpal is an individual who resides in or around Navi Mumbai, Maharashtra, India. On information and belief, Kandpal uses the user name "kandpalkunal03" on YouTube.

7. On information and belief, non-party YouTube, LLC ("YouTube") has its principal place of business in Mountain View, California.

**ALLEGATIONS OF FACT COMMON TO ALL COUNTS**

The Power Rangers Television Series and the Power Rangers Super Samurai Episodes

8. Originally created and produced by Haim Saban, the original Mighty Morphin Power Rangers series premiered in 1993. Following its introduction, Power Rangers quickly became the most-watched children's television program in the United States and appealed to consumers of all ages and backgrounds. Emphasizing the importance of teamwork, fitness, responsibility, and helping others, Power Rangers follows the exciting and often humorous adventures of ordinary young people who "morph" into extraordinary superheroes. After its U.S. debut, the popular show was released internationally, translated into numerous languages, and has become a global phenomenon airing in more than 40 markets worldwide with more than 700 episodes and counting.

9. Power Rangers Samurai, the eighteenth season of the show, originally premiered in February 2011. Currently in its nineteenth season, Power Rangers Super Samurai is a new series that features a new cast of Rangers and never-before-seen villains, as well as martial arts and advanced special effects. Power Rangers Super Samurai premiered on Nickelodeon in February

2012.

10. Power Rangers has a strong presence on the Internet. Users can access videos, music videos, and other multimedia content related to the Power Rangers Super Samurai season on the Power Ranger's website (http://www.powerrangers.com/videos.html). Power Rangers also has an active presence on YouTube and users can access videos and other multimedia content related to the Power Rangers Super Samurai season on a dedicated Power Rangers Super Samurai YouTube channel page (http://www.youtube.com/user/SabansPowerRangers/). These videos are created and approved by SCG and contribute to the overall value of the copyrighted material.

11. SCG is the owner of the copyright in each of the television episodes of Season 18, Power Rangers Samurai. On or about July 12, 2012, SCG applied for registration of the copyright in each of the television episodes of Season 18, Power Rangers Samurai (the "Samurai Works"). Attached hereto as Exhibit A is the list of the Samurai Works, together with copyright registration application numbers.

12. SCG is the owner of the copyright in each of the television episodes of Season 19, Power Rangers Super Samurai. On or about July 16, 2012, SCG applied for registration of the copyright in each of the television episodes of Season 19, Power Rangers Super Samurai (the "Super Samurai Works"). Attached hereto as Exhibit B is a list of the Super Samurai Works, together with copyright registration application numbers. Collectively, the Samurai Works and Super Samurai Works are referred to as the "Works."

13. SCG is the owner of a federal registration for the trademark "Power Rangers" for "[e]ntertainment services, in the nature of a live action television series; television programming; theatrical motion pictures; and live performances featuring costumed characters for the entertainment of children; and, on-line entertainment services offered over a worldwide communication network featuring on-line computer games, contests, webisodes, video clips, and information relating to a television series" in International Class 41, U.S. Registration Number 2506454, issued by the United States Patent and Trademark Office ("PTO") on November 13, 2001 (the "Power Rangers Mark"). The Power Rangers Mark is an incontestable registration.

14. SCG is the owner of a federal registration for the trademark "Power Rangers

Samurai" for "[e]ntertainment services in the nature of a live-action television series; entertainment services, namely, production of live events for children; entertainment services, namely, computer on-line services offered over a worldwide communication network featuring games and information relating to television show programs and family entertainment via a global communications network; entertainment services offered on-line over a worldwide communication network; providing a web site featuring video clips, and other multimedia materials, all relating to television show programs and family entertainment via a global communications network; and entertainment information in the nature of information about live action entertainment for children" in International Class 41, U.S. Registration Number 4098517, issued by the PTO on February 14, 2012 (the "Power Rangers Samurai Mark"). The Power Rangers Samurai Mark is an inherently distinctive mark that is unrelated to the goods or services that SCG provides. As such, the Power Rangers Samurai Mark is presumed to be entitled to strong trademark protection. Collectively, the Power Rangers Mark and the Power Rangers Samurai Mark are referred to as the "Registered Marks."

15. SCG is also the owner of the trademark "Power Rangers Super Samurai" for its entertainment services, including its live-action television series and its website which features video and multimedia materials relating to the television series.

Defendant Kandpal's Infringing YouTube Videos

16. On information and belief, Defendant Kandpal uses the user name "kandpalkunal03" on YouTube.

17. On or about June 28, 2012, Plaintiff learned that Defendant, using the user name "kandpalkunal03", had uploaded to YouTube the following two videos: "Power Rangers Super Samurai Episode 1 Part 1 of 2 (Live!)" and "Power Rangers Super Samurai Episode [sic] Part 2 of 2 (Live!)." On information and belief, when combined, these two videos are the full length of Episode One of the Power Rangers Super Samurai television series. On or about June 28, 2012, Plaintiff also learned that Defendant, using the user name "kandpalkunal03", had uploaded to YouTube the following two videos: "Power Rangers Super Samurai Episode 1 Part 1 of 2 in HD (Live!)" and "Power Rangers Super Samurai Episode 1 Part 2 of 2 in HD (Live!)." On

information and belief, when combined, these two videos are the full length of Episode One in HD format of the Power Rangers Super Samurai television series. Collectively, the four videos that Defendant uploaded to YouTube are referred to as the "Infringing Videos."

18. In posting the Infringing Videos to YouTube, Defendant also used Plaintiff's "Power Rangers" and "Power Rangers Super Samurai" trademarks to identify the Infringing Videos without authorization or license from SCG.

19. Defendant's uploading, reproduction, distribution and/or display of the Infringing Videos on YouTube were without authorization or license from SCG.

<u>Plaintiff's Take Down Notices And Defendant's Counter Notices To YouTube</u>

20. On or about June 28, 2012, Plaintiff submitted copyright infringement notifications for the Infringing Videos to YouTube, demanding the removal of the Infringing Videos from YouTube, pursuant to the Digital Millennium Copyright Act (the "DMCA"). Collectively, Plaintiff's copyright infringement notifications are referred to as the "Take Down Notices."

21. In response, rather than agree to the taking down of the Infringing Videos, Defendant submitted DMCA takedown "counter notifications" to YouTube, falsely declaring under penalty of perjury that the Infringing Videos are his "private property."

22. Specifically, Defendant submitted one counter-notification under the DMCA stating "This video is my private Property n u cn see hw many views i get on this video people are requesting me to upload more of this video. so please get clear who the hell is jealous of my video and trying to remove it frm youtube. [sic] I swear, under penalty of perjury, that I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled. I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant." Plaintiff received a copy of this counter-notification on or about July 6, 2012.

23. Defendant also submitted a second counter-notification under the DMCA stating "This is my private property who the hell is jealous should contact me...I swear, under penalty of

perjury, that I have a good faith belief the material was removed due to a mistake or misidentification of the material to be removed or disabled. I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant." Plaintiff received a copy of this counter-notification on or about July 9, 2012. Collectively, Defendant's two takedown counter-notifications are referred to as the "Counter Notices."

24. In light of the material misrepresentations in the Counter Notices, which on information and belief were false, YouTube has informed Plaintiff that it will reinstate the Infringing Videos to YouTube unless Plaintiff files an action seeking a court order to restrain Defendant's infringing activity.

**FIRST CLAIM FOR RELIEF**
**Copyright Infringement**
**17 U.S.C. §501**

25. Plaintiff incorporates by reference as though fully set forth herein the allegations of paragraphs 1 through 24 above.

26. Plaintiff is the owner of the copyrights in the Works.

27. In undertaking the conduct complained of in this action, Defendant knowingly, intentionally, and willfully violated these copyrights.

28. Plaintiff has not authorized Defendant to reproduce, distribute, prepare derivative works, perform, or display all or any part or portion of the Works for any purpose whatsoever.

29. By reason of Defendant's infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage to its ownership rights in the Works.

30. Further irreparable harm to Plaintiff is imminent as a result of Defendant's conduct, and Plaintiff is without an adequate remedy at law, because YouTube will reinstate the Infringing Videos to YouTube unless Plaintiff files an action seeking a court order to restrain Defendant's infringing activity. Plaintiff is entitled to an injunction restraining Defendant, his employees, agents, representatives, and all persons acting in concert with him from engaging in further acts of copyright infringement of the Works or from posting the Infringing Works to YouTube or any

other website.

31. Based upon Defendant's infringement, Plaintiff is entitled to recover all damages sustained by Plaintiff as a result of Defendant's acts of copyright infringement.

32. Based upon Defendant's infringement, Plaintiff is further entitled to recover from Defendant the gains, profits and advantages he has obtained as a result of his acts of copyright infringement.

## SECOND CLAIM FOR RELIEF
### DMCA Misrepresentation
### 17 U.S.C. § 512(f)

33. Plaintiff incorporates by reference as though fully set forth herein the allegations of paragraphs 1 through 32 above.

34. On information and belief, Defendant submitted two false DMCA Counter Notices to YouTube, which are in violation of the DMCA.

35. Defendant's Counter Notices contained false and perjurious statements that Defendant had "a good faith belief that the material" that was identified in Plaintiff's DMCA Takedown Notices was "removed due to a mistake or misidentification of the materials to be removed or disabled." Defendant's misrepresentations were material, as they will result in the reposting of Plaintiff's copyrighted Works on YouTube, and thus the continued infringement of Plaintiff's exclusive rights to the Works.

36. Plaintiff will be harmed by the restoration of access to the Infringing Works on YouTube. Defendant's posting of the Infringing Videos on YouTube compete with Plaintiff's own web properties and hinder its ability to build and maintain its own dedicated user base. Plaintiff is forced to devote resources, and to incur attorney's fees, in its continuing efforts to have the Infringing Videos removed from YouTube.

37. Given these material misrepresentations, which, on information and belief, were made knowingly by Defendant, Defendant is liable for any damages, including costs and attorneys' fees, incurred by Plaintiff as a result of the complained of wrongful conduct pursuant to 17 U.S.C. § 512(f).

## THIRD CLAIM FOR RELIEF
### Trademark Infringement
### 15 U.S.C. § 1114(1)

38. Plaintiff incorporates by reference as though fully set forth herein the allegations of paragraphs 1 through 37 above.

39. Defendant has infringed the Registered Marks within the meaning of 15 U.S.C. section 1114(1).

40. Plaintiff's use of the Registered Marks has been continuous, uninterrupted and preceded Defendant's use of the "Power Rangers" and "Power Rangers Super Samurai" marks for the Infringing Videos.

41. Each of the Registered Marks is inherently distinctive and/or has acquired secondary meaning. The Power Rangers Mark is also an incontestable registration.

42. Defendant's use of the "Power Rangers" and "Power Rangers Super Samurai" marks for the Infringing Videos are confusingly similar to the Registered Marks.

43. Defendant has infringed the Registered Marks by various acts, including, without limitation, the use of the "Power Rangers" and "Power Rangers Super Samurai" marks in interstate commerce in connection with the selling, offering for sale, promotion and/or advertising of the Infringing Videos.

44. Defendant's objectionable use of the "Power Rangers" and "Power Rangers Super Samurai" marks has not been authorized by Plaintiff. Such use is likely to cause confusion, to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendant with Plaintiff. Additionally, such use misappropriates the extensive goodwill built up by Plaintiff.

45. Plaintiff has suffered and will suffer damage to its business, reputation and goodwill and the loss of profits that it would have made but for this trademark infringement.

46. This trademark infringement has caused and, unless restrained and enjoined, will continue to cause, serious irreparable injury and damage to Plaintiff and to the goodwill associated with Plaintiff's mark. As a result of the misrepresentation made to the unknowing public, the Plaintiff is therefore entitled to injunctive relief.

47. On information and belief, Defendant committed the above-described acts and omissions willfully, and under the circumstances Plaintiff is entitled to enhanced damages pursuant to 15 U.S.C. § 1117(a)(3). This is also an exceptional case in light of his willful infringement, thereby entitling Plaintiff to the recovery of its costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a)(3).

**FOURTH CLAIM FOR RELIEF**
**Trademark Infringement**
**15 U.S.C. § 1125(a)(1)**

48. Plaintiff incorporates by reference as though fully set forth herein the allegations of paragraphs 1 through 47 above.

49. Defendant has infringed the Power Rangers Super Samurai common law trademark within the meaning of 15 U.S.C. section 1125(a)(1).

50. Plaintiff's use of the Power Rangers Super Samurai mark has been continuous, uninterrupted and preceded Defendant's use of the "Power Rangers" and "Power Rangers Super Samurai" marks for the Infringing Videos.

51. The Power Rangers Super Samurai mark is inherently distinctive and/or has acquired secondary meaning.

52. Defendant's use of the "Power Rangers" and "Power Rangers Super Samurai" marks for the Infringing Videos are confusingly similar to Plaintiff's Power Rangers Super Samurai mark for the same goods.

53. Defendant has infringed the common law trademarks of Plaintiff by various acts, including, without limitation, the use of the "Power Rangers" and "Power Rangers Super Samurai" marks in interstate commerce in connection with the selling, offering for sale, promotion and/or advertising of the Infringing Videos.

54. Defendant's objectionable use of the "Power Rangers" and "Power Rangers Super Samurai" marks has not been authorized by Plaintiff. Such use is likely to cause confusion, to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendant with Plaintiff. Additionally, such use misappropriates the extensive goodwill built up by Plaintiff.

55. Plaintiff has suffered and will suffer damage to its business, reputation and goodwill and the loss of profits that it would have made but for this trademark infringement.

56. This trademark infringement has caused and, unless restrained and enjoined, will continue to cause, serious irreparable injury and damage to Plaintiff and to the goodwill associated with Plaintiff's mark. As a result of the misrepresentation made to the unknowing public, the Plaintiff is therefore entitled to injunctive relief.

57. On information and belief, Defendant committed the above-described acts and omissions willfully, and under the circumstances Plaintiff is entitled to enhanced damages pursuant to 15 U.S.C. § 1117(a)(3). This is also an exceptional case in light of his willful infringement, thereby entitling Plaintiff to the recovery of its costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a)(3).

## PRAYER

Plaintiff demands judgment as follows:

A. Declaratory relief for at least the following:

    1. A declaration that Defendant infringed Plaintiff's copyrights for the Works and that such infringement was willful.

    2. A declaration that Defendant knowingly misrepresented material facts in the DMCA Counter Notices.

    3. A declaration that Defendant infringed Plaintiff's Registered Marks and the Power Rangers Super Samurai mark, and that such infringement was willful.

    4. A declaration of the rights of Plaintiff in connection with the claims asserted in this action.

B. Damages for copyright infringement, including actual damages.

C. Damages under the DMCA, 17 U.S.C. § 512(f), including costs and attorney fees.

D. Damages for trademark infringement, including Defendant's profits, Plaintiff's actual damages, statutory damages, costs, and attorney fees.

E. Injunctive relief against Defendant for at least the following:

1. Prohibiting and restraining Defendant from future copyright infringement of the Works.

2. Prohibiting and restraining Defendant from any future reproduction, preparation of derivative works, distribution, performance, and/or display of the Works.

3. Prohibiting and restraining Defendant from any future distribution, performance, or display of the Infringing Videos.

4. Prohibiting and restraining Defendant from submitting false DMCA takedown counter notices.

5. Requiring Defendant to take all necessary steps to cause all web sites, including YouTube, where the Infringing Videos are currently posted or available, to remove or disable access to those works.

6. Enjoining Defendant from using any trademark that is confusingly similar to the Registered Marks or to the Power Rangers Super Samurai mark.

F. Costs.

G. Attorney's fees.

H. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: July 18, 2012          SIDEMAN & BANCROFT LLP

By: _____
Richard J. Nelson
Attorneys for SCG POWER RANGERS LLC

6918-4\1506595v4

11
COMPLAINT